# THE CUMBERLAND HYDRAULIC CEMENT AND MANUFACTURING COMPANY

*v.*

# WHEATLEY.

---

### WRITTEN CONTRACT; SUBSTITUTION OF ORAL AGREEMENT.

1. The parties to a written contract for the sale of merchandise may modify its terms or substitute another contract therefor in whole or in part, and such modification or substitution may be by parol.
2. An oral agreement by the purchaser of merchandise, who has failed to make payment therefor as stipulated in the written contract of sale, for the return of the goods to the seller, will revest the title thereto in the latter.
3. And the fact that, contemporaneous with the agreement for the return of the goods, it was further agreed that they should be held by the purchaser as upon consignment from the seller, will not make it necessary, in order to complete the changed relations between the parties, that the original account of the purchaser shall be credited with the price of the goods returned and a new account opened with him as consignee; but it will be sufficient for his protection that he is credited as he may from time to time report sales and remit the proceeds.

No. 574.  Submitted October 8, 1896.  Decided November 2, 1896.

HEARING on an appeal by the plaintiff from a judgment on a verdict directed by the court in an action of replevin. *Reversed.*

The COURT in its opinion stated the case as follows:

This is an action of replevin brought by the appellant, The Cumberland Hydraulic Cement and Manufacturing Company, in the Supreme Court of the District to recover of defendant, Joseph M. Wheatley, 1,350 barrels of cement. Ten hundred and thirty-eight barrels were found by the marshal and seized under the writ. At the close of the plaintiff's evidence, the court instructed the jury to return a verdict for the defendant; and from the judgment thereon plaintiff has appealed.

It appears from the evidence offered by the plaintiff that it is a corporation engaged in the manufacture of cement at Cumberland, Maryland, and has its principal office in the city of New York, where its president, M. S. Ackerman, resides. On October 9, 1894, the plaintiff wrote the defendant accepting an offer made by him for the purchase of 5,000 barrels of cement, to be shipped at the rate of three carloads daily.

The letter of acceptance contained this clause:

" We will consign shipments to J. M. Wheatley, Washington, D. C., and will make shipments of such cement as will pass the District specifications—terms of sale cash at thirty days—and trust your arrangements will be such as to give us prompt settlement."

An option of 1,000 additional barrels was also included. By January 26, 1895, the plaintiff had delivered under the order more than 5,000 barrels, and defendant was indebted on account thereof more than $2,000. A large quantity of the cement had been condemned or rejected by the District authorities, and had been so reported, from time to time, by the defendant.

Plaintiff's president, Ackerman, came to Washington at that time to have a settlement. Defendant told him he could not make a settlement, but would turn the cement back to the plaintiff, which was agreed to. There were then 1,100 barrels in the warehouse of one Hewitt, where they had

been stored by the defendant. Defendant promised to write an order for the cement, and a few days later wrote several letters to the plaintiff on the subject. In the first, dated January 29, 1895, he said : " I have in storage here, subject to your order and for sale for your account, the following cars cement. [Here follows a description of same as amounting to 1,100 barrels.] . . . The conditions of such sale are to be that the wood cement is to net you 72 cents per bbl. f. o. b. Cumberland, and the bulk cement is to net you 50 cents per bbl. f. o. b. Cumberland." Other parts of the letter referred to negotiations for sale to one Block. On January 31, and February 1, he wrote again to plaintiff, notifying it of the arrival of 250 barrels more, which he agreed to hold on same terms. On January 30, Ackerman acknowledged the receipt of the letter of the 29th, and called attention to the fact that the statement of 1,100 barrels was 250 short of expectation, and asked an explanation. This letter contains the following clause : " The understanding is, that you sell this cement for our account for not less than 72c. in wood and 50c. in bulk to us at the works. If you sell it to Mr. Block, cash must accompany the order ; and if you sell it to any outside party other than the Government, let us know first. I note that you say that whether Block gives a voluntary order to the clerk, check for $1,013 will be made payable to ourselves ; or if to you, you will endorse it to us. I trust that this will be a sure and speedy settlement of the whole affair." On February 7, 1895, plaintiff gave the defendant an order in writing to deliver the cement to J. H. McGill as per list of 1,350 barrels, and added therein : " When you have delivered the cement and can show a receipt for same, we will credit your account for the same." This order was presented and delivery refused. Ackerman then came to Washington to see the defendant, who again refused to deliver the cement, whereupon the suit was instituted.

The cross-examination of the said Ackerman contains the following : " Did you not state to Mr. Wheatley at the time

(referring to the conversation preceding the letter of January 29) that these goods were sold on 30 days' credit and that you had to have some means of accounting to your firm for not insisting on payment?" Witness said: "I would not be surprised if I said that." In answer to the question, "In order to account to your firm for not insisting upon payment at the expiration of 30 days, you wanted an order of the character you have here; was not that the purpose of the order?" He said, "Partially so, you might say." He was then asked, "Didn't you so state to Mr. Wheatley in order to get the order from him?" and replied, "Yes; I told him I thought I could sell the cement, but when the time came to sell it I did not want to make any dicker about it." Witness then produced a statement of account with defendant, dated March 30, 1895, showing items of cement delivered from September 29, 1894, to December 21, 1894, and amounting, at the prices stated, to $3,533.68. Three credits were entered to defendant as follows: "January 14, 1895. By cash, $550; January 28.. By note, C. C. C. Co., $213.68; March 30. By cash, $300." Plaintiff also read in evidence an agreement duly signed by the defendant and approved by counsel, the second clause of which is as follows: "That the cement mentioned in said letters and in this cause came over the Baltimore and Ohio Railroad, and was delivered to me, and is the same cement in controversy." He also read the following affidavit of defendant, filed in the cause March 13, 1895: "Joseph M. Wheatley, being duly sworn, deposes and says that he is the defendant in the above-entitled cause; that he had and has a contract with plaintiff to purchase from said plaintiff and it to sell to him fifteen thousand barrels of its cement, more or less; that in pursuance of that contract it has sold to him about nine thousand barrels; that this cement, now in controversy and replevied in this action, was not in accordance with the contract and was rejected by the city and by this affiant stored in Walter F. Hewitt's

warehouse, where it still remains; that this cement mentioned in the declaration filed herein was consigned to this affiant, the freight paid by him, and this cement charged on the books of the plaintiff to him." Some other evidence was offered tending to identify the cement found in the Hewitt warehouse and seized by the marshal, as shown by his return to the writ, and relating to certain warehouse charges claimed by said Hewitt. The cement seized was suffered to remain in the warehouse.

*Mr. Wm. J. Miller* for the appellant.

*Mr. Clarence A. Brandenburg* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court :

After careful consideration of the grounds urged in support of the judgment, we are of the opinion that it was error to direct a verdict for the defendant. Plaintiff's evidence was sufficient to authorize a verdict in its favor, and should have been submitted to the jury.

So far as the identity of the cement is concerned, that was fully covered by the agreement of the parties, and it was unnecessary for plaintiff to introduce any evidence on that point.

The contracting parties had the power to modify or to substitute, in whole or in part, the contract for the sale and delivery of the cement, and this was not required to be in writing even, much less under seal. *Teal* v. *Bilby*, 123 U. S. 572, 578. The parol agreement testified to by Ackerman was sufficient to revest the property in the plaintiff, and the confirmatory letters of January 29 and later were not necesssary for the purpose. By the terms of the original contract, defendant had the right to reject and refuse to pay for such of the cement shipped to him as might fail to pass the District inspection. He stored it as it came in and notified plaintiff of the condemnations, as made, at the same time forwarding samples to the New York office. Considerably

more than thirty days elapsed, and he neither formally tendered it back nor paid for it. He, in fact, owed the plaintiff nearly if not quite double the price of the cement remaining in the storage warehouse at the time that he offered to return it. On account of this condition of affairs, Ackerman came to Washington to arrange a settlement of the matter. Defendant, as he had a right to do, tendered back the cement, which he represented as amounting to 1,350 barrels, and Ackerman, acting for his company, received it. The matter was closed. Nothing more remained to be done. *Beardsley* v. *Beardsley*, 138 U. S. 262, 266. At or about the same time it was agreed that the defendant might sell the cement for the account of the plaintiff, and a net selling price was fixed. Whether defendant expected to make a commission by selling at a higher figure, if he could, does not appear. In the letter of January 29, he acknowledged having but 1,100 barrels for sale, and plaintiff at once wrote requiring a statement as to the remaining 250 barrels. These were added to the lot, as we have seen, by the defendant's letters of January 30 and February 1.

Plaintiff's letter instructed him in plain terms not to sell to a party named except for cash on delivery, and to give notice to it before completing a sale to any other purchaser than the Government.

It was not necessary to complete the changed relations of the parties, that the plaintiff should then and there have credited defendant's old account with the price that had been charged to him and have opened a new account with him as agent or consignee for sale. As defendant was expected to sell the cement, at the same price, for the account of the plaintiff, and remit the proceeds, there was no necessary reason why the change in the accounts should have been made. That would have been an idle formality, and he was not called on to perform it. It was amply sufficient for defendant's protection that he should be credited, as he might from time to time report sales and remit the proceeds. He

was informed in the letter directing him to deliver the cement to McGill that his account would be credited with the amount delivered. If he had peaceably yielded up the 1,038 barrels that have been replevied, he would still be chargeable with the price of the 312 barrels that have not been found or accounted for. Under the evidence shown in the record, this objection to the completion of the second arrangement seems to be an afterthought. Nor was the mere fact that the general account between plaintiff and defendants, dated March 30, 1895 (about two weeks after the institution of the suit), contained the original charge for all the cement, including that which had been tendered back and accepted, sufficient of itself to warrant a jury in finding that no return had been made, much less to justify an instruction to find for the defendant. If this action fails, defendant will be liable for the whole of that account as it stands; if it succeeds, he will be entitled to a credit for the purchase price of the 1,038 barrels that have been replevied.

The points that have been argued touching the claims of the warehouseman for storage need not be considered. They cut no figure in the case as between the plaintiff and defendant, and he is not a party to the suit.

It follows that the judgment must be reversed, with costs to the appellant, and the cause remanded for a new trial. It is so ordered.

*Reversed and remanded.*